IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**FRANCIS LEON HARVEY,**

      Plaintiff,

  vs.                                                          No. 08CV107 MCA/CG

**THE UNITED STATES OF AMERICA**,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendant's Pretrial Memorandum* [Doc. 92] (therein seeking dismissal for lack of subject matter jurisdiction), *Plaintiff's Brief on the Issue of Proof of Negligence as a Prerequisite for Jurisdiction* [Doc. 93], and *Plaintiff's Supplemental Materials and Arguments to Converted Motion for Summary Judgment*. [Doc. 107]

The dispositive question in this case is whether Plaintiff, under the facts of this case, can proceed on his claim of medical negligence under the Federal Tort Claims Act (FTCA) where he has failed to proffer any expert medical evidence. I conclude that he cannot.

By Order of this Court on May 4, 2011 [Doc. 105], the parties were given notice of its intention to convert Defendant's motion to dismiss for lack of subject matter

jurisdiction into a motion fo summary judgment, and the parties were provided with an opportunity to respond to the changed status of the motion, with submissions of supplemental materials and argument. [Doc. 105]  Having considered the submissions, the relevant law, and otherwise being fully advised in the premises, this Court herein renders summary judgment in favor of Defendant.

## I.     PROCEDURAL BACKGROUND

The facts underlying this action have been throughly set out in three previously entered *Opinions* of this Court. [Docs. 68, 81, 99]  Those facts are incorporated herein by reference and will be restated only as is necessary to provide an understanding of, and place in context, the matter now under consideration.

On February 6, 2004, Plaintiff Francis Leon Harvey, an enrolled member of the Navajo Tribe who resides on that portion of the Navajo Nation located in the State of New Mexico, presented at the Fort Defiance Indian Hospital ("FDIH") walk-in clinic complaining of hand, leg, and rib pain resulting from a fall on ice.  The FDIH is located on that portion of the Navajo Nation located in the State of Arizona, and is operated by Indian Health Services ("IHS"), an agency of the United States government.

Health care providers at the FDIH gave Plaintiff Motrin and an ice pack for pain, and noted in his medical record, "X-rays all ok."  Notwithstanding this notation, a radiology department report of X-rays of Plaintiff's right hand stated that "[t]here is a fracture of base of the fifth metacarpal of the right hand which enters the carpometacarpal joint." [Doc. 54, Exs. A, B]  Plaintiff returned to the FDIH multiple times in March of

2004, complaining of pain. [Doc. 1] On April 20, 2004, Plaintiff was informed by the FDIH's orthopedic clinic that surgery was recommended.

On May 5, 2004, Dr. Victor Brown, a surgeon at the FDIH, performed surgery on Plaintiff's hand. Notations in Plaintiff's medical records reveal that both the surgery and "all adverse reactions" were discussed with Plaintiff. [Doc. 54 Ex. H] Similarly, the consent form signed by Plaintiff notes the "[c]ommon and important risks associated with the proposed operation . . . include infection, neural vascular trauma, non-union, [and] arthritis." [Doc. 54, Ex. I]

Over the course of the next two years, Plaintiff continued to return to the FDIH, both for follow-up visits and also to be seen for pain, swelling, and other complaints. For instance, after his first follow-up appointment on May 10, 2004, Plaintiff returned to the clinic on May 13, 2004 because of pain in his hand. He went back on June 10, 2004 and April of 2006, complaining that his hand "was still not right." [Doc. 1 at 5]

On January 29, 2008, Plaintiff filed his *FTCA Medical Malpractice Complaint*, alleging that the FDIH had breached the standard of care in its treatment of Plaintiff's right hand, that this breach was the proximate cause of Plaintiff's injury, and that Plaintiff had incurred both economic and non-economic damages. [Doc. 1 at 6-8] Plaintiff demanded *nalyeeh* under Navajo common law, claiming that damages in the amount of $2,016,120 were necessary in order to "make Plaintiff whole" and "so that Plaintiff will have no hurt feelings against the health care providers and [the FDIH]." [Doc. 1 at 9]

On September 25, 2008, the Court entered a *Scheduling Order*, which required

Plaintiff to disclose his expert witnesses no later than December 23, 2008.  [Doc. 15]  On December 2, 2008, the Court entered an *Order Staying Discovery*, [Doc. 33] and on January 23, 2009, the parties filed a *Joint Motion for Extension of Discovery Deadlines*, requesting that "[e]xpert disclosures by Plaintiff be extended to May 18, 2009." [Doc. 36]  The Court granted the motion.  [Doc. 37]  Although Plaintiff twice moved for an extension of this discovery deadline, the requested extensions were denied.  [Docs. 43, 46 47, 50]  Thereafter, Plaintiff filed an *Unopposed Motion to Judge M. Christina Armijo to Reschedule Trial on the Merits*, which this Court granted.  [Docs. 51, 57]  Plaintiff's *Unopposed Motion to Judge M. Christina Armijo to Reschedule Trial on the Merits* did not seek an extension of the discovery deadline for expert disclosures. [Doc. 51]  Plaintiff never disclosed an expert witness in support of his medical malpractice claim.

On October 6, 2008, Plaintiff filed a motion for partial summary judgment, arguing that the applicable law in this matter is Navajo law, because that is the "law of the place" under the FTCA, 28 U.S.C. § 1346(b)(1) (1996).  [Docs. 17, 18]  This Court granted the motion by *Memorandum Opinion and Order* entered September 29, 2009.  [Doc. 68]  Although Defendant moved for reconsideration, this Court denied Defendant's motion by *Memorandum Opinion and Order* entered September 30, 2010.  [Docs. 71, 99]

On June 12, 2009, Defendant filed *Defendant's Motion to Dismiss Certain Claims Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(h)(3)* on the ground that all claims of negligence preceding May 1, 2004 must be dismissed as time-barred. [Docs. 53, 54]  This Court granted the motion by *Memorandum Opinion and Order* entered March 9, 2010.

[Doc. 81] Although Plaintiff moved for reconsideration, this Court denied Plaintiff's motion by *Memorandum Opinion and Order* entered September 30, 2010. [Docs.82, 99]

On September 7, 2010, this Court held a pretrial conference in this case. [Doc. 89] At the pretrial conference, Defendant informed the Court that it intended to file a pretrial memorandum arguing that the Court lacks subject matter jurisdiction over Plaintiff's *FTCA Medical Malpractice Complaint* because Plaintiff could not establish a negligent or wrongful act or omission of any employee of the Government in the absence of expert testimony. This Court ordered the parties to file simultaneous trial briefs on the issue on or before September 21, 2010. [Doc. 89] In response, Defendant filed *Defendant's Pretrial Memorandum* [Doc. 92] and Plaintiff filed *Plaintiff's Brief on the Issue of Proof of Negligence as a Prerequisite for Jurisdiction.* [Doc. 93]

On May 4, 2011, this Court issued an *Order* notifying the parties that it intended to convert Defendant's motion to dismiss for lack of subject matter jurisdiction into a motion for summary judgment because "resolution of the jurisdictional question is intertwined with the merits of the case." [Doc. 105 at 2, 3] Quoting Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). This Court provided the parties "with the opportunity to respond to the changed status of the motion, with the submission of supplemental materials and argument." [Doc. 105 at 3] In response, Plaintiff filed *Plaintiff's Supplemental Materials and Arguments to Converted Motion for Summary Judgment* on May 19, 2011. [Doc. 107] Defendant's converted motion for summary judgment is now ripe for decision.

## II. ANALYSIS

### A. Standard of Review

Summary judgment under Fed.R.Civ.P. 56© "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©. "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed.R.Civ.P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-

moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

### B.  Negligence and the Navajo Common Law Concept of *Nalyeeh*

Defendant contends that this Court lacks subject matter jurisdiction over Plaintiff's *FTCA Medical Malpractice Complaint* because, under the facts of this case, Plaintiff cannot establish a "negligent or wrongful act or omission of any employee of the Government" in the absence of expert testimony.  § 1346(b)(1).  [Doc. 92]  Plaintiff responds that expert testimony is not required because Plaintiff has demanded *nalyeeh* under Navajo law. [Docs. 93, 107]

"The United States, as sovereign, is immune from suit save as it consents to be sued."  Lindstrom v. United States, 510 F.3d 1191, 1193 (10th Cir. 2007) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)).  "The litigant asserting jurisdiction must carry the burden of proving it by a preponderance of the evidence."  Id.

"The FTCA waives sovereign immunity for actions against the United States resulting from injuries caused by the negligent acts of governmental employees while acting in the scope of their employment."  Garcia v. United States Air Force, 533 F.3d 1170, 1175 (10th Cir. 2008).  The United States may be held liable to the same extent as a private person "in accordance with the law of the place where the act or omission occurred."  § 1346(b)(1).  Pursuant to this Court's September 29, 2009 *Memorandum Opinion and Order*, Navajo law is the law of the place in this case.  [Doc. 68]

"Under Navajo common law, damages in personal injury actions are measured by

*nalyeeh*." Nez v. Peabody Western Coal Co., Inc., 2 Am. Tribal Law 468, 474 (Nav. Sup. Ct. 1999). *Nalyeeh* is "akin to, but not quite the same, as the Anglo-European concepts of restitution and reparation. The similarity is that *nalyeeh* requires payment or compensation to people who are injured, but it is quite different in its procedures." Benally v. Broken Hill Proprietary, Ltd., 3 Am. Tribal Law 518, 520 (Nav. Sup. Ct. 2001). "*Nalyeeh* has an additional procedural aspect which addresses relationships. *Nalyeeh* does not simply require restitution or reparation, but calls upon the person who has caused an injury or is responsible for an injury to talk out both compensation and relationships." Id. Generally, "the amount of *nalyeeh* to be paid should be enough so that there is no hard feelings" and "the parties to the dispute are restored to a harmonious relationship." Id. at 521 (Internal quotation marks and citation omitted). "Based on these principles, *nalyeeh* incorporates what might be expressed in Anglo terms as a procedural requirement and a substantive result." Allstate Indemnity Co. v. Blackgoat, 6 Am. Tribal Law 631, 636 (Nav. Sup. Ct. 2005). In addition to this Court's review of Navajo Nation Supreme Court case authorities, this Court held a hearing wherein the Honorable Robert Yazzie, former Chief Justice of the Navajo Supreme Court, provided, on behalf of the Court and the parties, general background information as to the concept of *nalyeeh.*

     Plaintiff contends that "[w]here *nalyeeh* is demanded, there is no requirement for experts" because "there is no requirement for a showing of negligence in the Anglo sense of that legal concept." [Doc. 107 at 3] However, the Navajo Nation Supreme Court explicitly has rejected the argument that *nalyeeh* and negligence are mutually exclusive

legal doctrines.  Joe v. Black, 7 Am. Tribal Law 588, 593 (Nav. Sup. Ct. 2007).  In Joe, the Court noted that negligence is "part and parcel of *nalyeeh*," id. at 594, and that the Navajo Nation Courts consistently have "applied negligence and *nalyeeh* together," Id. at 593 (citing Benally v. Mobil Oil Corp., 4 Am. Tribal Law 686, 691-94 (Nav. Sup. Ct. 2003); Jensen v. Giant Industries, Arizona, Inc., 4 Am. Tribal Law 579, 584-85 (Nav. Sup. Ct. 2002)).  Indeed, "the Navajo Nation Code mandates the application of negligence principles."  Id.; see 7 Navajo Nation Code tit. 7, § 701(B) (2003) ("Where the injury was inflicted as the result of negligence, the judgment shall fairly compensate the injured party for his or her injuries or loss. The Court shall consider the comparative fault of the parties in making an award of damages.").

> That the concepts of negligence and comparative negligence, as expressed in the English terms of art, originated in the Anglo-American adversarial system does not per se make it incompatible with *nalyeeh*. [The Navajo Nation Supreme Court] has applied *nalyeeh* to cases involving disputed claims to worker's compensation and non-Indian insurers, concepts originating from Anglo-American law that might be characterized as "adversarial" as well.

Joe, 7 Am. Tribal Law at 593 (citing Allstate Indemnity Co., 6 Am. Tribal Law at 635; Broken Hill Proprietary, Ltd., 4 Am. Tribal Law at 691-94; Benalli v. First Nat'l Ins. Co. of America, 1 Am. Tribal Law 498, 508-509 (Nav. Sup. Ct. 1998)).

Plaintiff asserts that both Mobil Oil Corp. and Joe are distinguishable from this case because they involved "third party liability and multiple defendants."  [Doc. 107 at 7]  However, this is a distinction without a difference.  In Mobil Oil Corp., the Navajo Nation Supreme Court considered whether the plaintiff's personal injury action was

9

barred by the plaintiff's own negligence. 4 Am. Tribal Law at 691. The Court held that the Navajo Nation "is a pure comparative negligence jurisdiction" and that the doctrine of *t' áá sh shi ákwiisdzaa*, or "I take responsibility for my own actions," is consistent with comparative negligence "as reduction of the award makes certain [that the plaintiff] takes responsibility for his own actions, but still compensates him for that part of injury caused by [the defendant]." Id. at 692.

In Joe, the Navajo Nation Supreme Court squarely rejected the notion that "it is legally impossible to proceed under both comparative negligence and *nalyeeh* together because they are incompatible doctrines." 7 Am. Tribal Law at 593. The Court held that

> there is no conflict between comparative negligence and *nalyeeh*. Comparative negligence serves the purposes of identifying who is responsible to make the injured party whole, and allocating the responsibility for the injury between them. The doctrine assures that an individual tortfeasor is responsible only for his or her actions, and is not responsible for the conduct of others. This is a Navajo principle, even if the Court uses Anglo-American legal language to describe it. *Nalyeeh* defines how the responsible parties, once identified and once their collective responsibility is allocated, make the injured party whole. They are indeed then not incompatible doctrines, but work together to bring people back in harmony.

Id. at 593-94 (Citation omitted). Thus, negligence is consistent with Navajo concepts of fault, because it ensures that the defendant is responsible only for his or her own wrongful conduct. Casaus v. Diné College, 7 Am. Tribal Law 509, 513 (Nav. Sup. Ct. 2007).

As the foregoing case authorities indicate, Plaintiff must prove that Defendant was negligent in order to prevail on his *FTCA Medical Malpractice Complaint*. See also Laird v. Nelms, 406 U.S. 797, 799 (1972) (holding that the FTCA contains "a uniform

federal limitation on the types of acts committed by its employees for which the United States has consented to be sued.  Regardless of state law characterization, the Federal Tort Claims Act itself precludes the imposition of liability if there has been no negligence or other form of misfeasance or nonfeasance, on the part of the Government" (internal quotation marks and citation omitted)).  "As a general rule, the tort of negligence has four components–a duty to the person injured, a breach of that duty, causation, and resulting damages."  Jensen, 4 Am. Tribal Law at 584.  This Court must determine whether Plaintiff can meet his burden of proof on these essential elements without expert testimony.

      Baldwin v. Chinle Family Court, 7 Am. Tribal Law 643 (Nav. Sup. Ct. 2008), is instructive on this point.  In Baldwin, the Navajo Nation Supreme Court considered whether the Navajo Nation had met its burden to prove that a minor child was "dependant" under Title 9 of the Navajo Nation Code, Section 1002(O)(2) (2005).  Id. at 645.  The Petition for Adjudication of Dependant Child alleged, in relevant part, that

> the child's mother "is diagnosed as being schizophrenic and is under doctor's care, and her ability to parent a child is questionable due to the fact that she has been involuntary committed for her behaviors."  The Petition further states that the mother "had been involuntary [sic] committed twice during the past three years" and "no one brought forth notice to Court [sic] that she had a child."

Id. at 644 (alteration in original).  A hearing was conducted on the Petition and Clara Teller, a Child Protective Service worker, testified that the child's mother had "revealed to her, 'she was schizophrenic, she's diagnosed as schizophrenic' and diabetic." Id.  "No

evidence was produced before the Court that the mother's health care providers [had] been consulted as to inform the Court of Ms. Baldwin's present ability to care for the child or revealed any current condition which suggested an on-going inability of the mother to care for her child." Id. at 645.

The Court held that the evidence regarding the mother's health and mental state was insufficient to establish dependency under Navajo law.

> Diagnosis of an individual requires professional expertise; when such a diagnosis is used outside the context of its professional use it introduces the risks of mischaracterizations, inaccuracy and potential prejudice and bias. In the case at hand, a mother's disclosure of her condition utilizing laymen's language to another individual who has no knowledge of the scope of the diagnosis and does not possess the appropriate clinical training and experience in diagnosis, is harmful. While the mother's disclosure of the diagnosis was voluntary, it was done by an individual who also did not possess the full clinical training to describe how that diagnosis was used to design a treatment plan and whether the goals of that plan had or were being met.

Id. at 646. The Court explained that the Navajo concept of *k´é*, which "defines a peaceful and harmonious relationship which respects the present and future well being of the person," "requires that families be properly protected from nonexistent or faulty conclusions" based on lay testimony. Id. at 646-47.

Pursuant to Baldwin, it strongly appears that expert medical testimony is necessary to establish the diagnosis and treatment of a medical condition under Navajo law.

However, to the extent that Navajo law is silent, Title 7 of the Navajo Code, Section 204(D) (2003) provides that the issue "may be decided according to comity with

reference to the laws of the state in which the matter in dispute may have arisen."[1] The dispute in this case arose in the state of Arizona and, therefore, the Court turns to an analysis of Arizona law.

"In medical malpractice actions, as in all negligence actions, the plaintiff must prove the existence of a duty, a breach of that duty, causation, and damages. The yardstick by which a physician's compliance with [his] duty is measured is commonly referred to as the standard of care." Seisinger v. Seibel, 203 P.3d 483, 492 (Ariz. 2009) (Internal quotation marks and citation omitted) (alteration in original). "Arizona courts have long held that the standard of care normally must be established by expert medical testimony." Id. "Thus, except when it was a matter of common knowledge . . . that the injury would not ordinarily have occurred if due care had been exercised, a plaintiff could not meet the burden of production under the common law absent expert testimony." Id. (Internal quotation marks and citation omitted); see Dodson v. Pohle, 239 P.2d 591, 593 (Ariz. 1952) (holding that expert testimony was not required when a one-month old child

---

[1] The Navajo Nation courts first look to *Diné bi beenahaz'áanii*, Navajo traditional, customary, natural or common law, "whenever Navajo Nation statutes or regulations are silent on matters in dispute before the courts." Navajo Nation Code, tit. 7, § 204(A). "To determine the appropriate utilization and interpretation of *Diné bi beenahaz'áanii*," the court may receive "advice from Navajo individuals widely recognized as being knowledgeable about *Diné bi beenahaz'áanii*." Navajo Nation Code, tit. 7, § 204(B). Neither Plaintiff nor Defendant have provided this Court with any expert testimony regarding the application of *Diné bi beenahaz'áanii* to medical malpractice complaints and, therefore, it is appropriate to consider state law as a matter of comity. See Jensen, 4 Am. Tribal Law at 583-84 (reviewing principles of English-American common law to decide a question of Navajo law because the plaintiff had failed to follow the proper procedure to prove *Diné bi beenahaz'áanii* under Navajo Nation Code, tit. 7, § 204(B)).

was burned during an oxygen inhalation treatment in relevant part because the child's injury was unrelated to the ailment that prompted the treatment); Tiller v. Von Pohle, 230 P.2d 213, 214-15 (Ariz. 1951) (holding that expert testimony was not required when a cloth sack was left inside of a patient's abdomen following surgery). "The Arizona cases mirror the general common law rule," requiring expert medical testimony in medical malpractice actions. Seisinger, 203 P.3d at 492 n.7.

Plaintiff contends that expert testimony is not necessary in this case because "[i]t is undisputed that full recovery is the expected outcome" of Plaintiff's surgery, Plaintiff did not have a full recovery, and "[l]aymen could reasonably draw a conclusion that the reason that [Plaintiff] did not have [a] complete recovery was due to the negligence that occurred during the surgery." [Doc. 107 at 14-15] For support, Plaintiff relies on his affidavit, in which he averred that the FDIH orthopedic clinic had informed him that "the operation would fix [his] right hand." [Doc. 107-5] However, Defendant submitted evidence indicating that Plaintiff was informed of "all adverse reactions" associated with the surgery, including the risk of "infection, neural vascular trauma, non-union, [and] arthritis." [Doc. 54, Exs. H, I] Regardless, the issue is not the surgical outcome that Plaintiff expected but, rather, whether Plaintiff's injury is within the common knowledge and experience of laymen.

Plaintiff has failed to demonstrate that his hand injury is the type of injury that is "so grossly apparent that a layman would have no difficulty in recognizing it as having been caused by negligence." Faris v. Doctors Hospital, Inc., 501 P.2d 440, 445 (Ariz.

14

App. 1972) (internal quotation marks and citation omitted) (holding that the plaintiff's "vertebrae disk herniation" clearly is not "the type of 'injury' which is so grossly apparent that a layman would have no difficulty in recognizing it as having been caused by negligence."). His injury is not wholly unrelated to his surgical procedure and a person without medical training or knowledge would not clearly understand that Plaintiff's injury would not have occurred in an "open versus closed right 5th metacarpal base fracture internal fixation under fluoroscopic guidance" in the absence of negligence. [Doc. 54, Ex. I] Accordingly, the Court concludes that expert testimony is necessary for Plaintiff to prevail on his medical malpractice claim. In the absence of expert testimony, there are no genuine issues of material fact on Plaintiff's FTCA medical malpractice complaint and Defendant is entitled to judgment as a matter of law. Id. at 447.

The Court rejects Plaintiff's argument that the trier of fact reasonably may infer negligence based on the doctrine of *res ipsa loquitor*. [Doc. 107 at 13-14] *Res ipsa loquitor*

> allows a trier of fact to draw an inference of negligence when (1) the injury is "of a kind that ordinarily does not occur in the absence of negligence," (2) the injury is "caused by an agency or instrumentality subject to the control of the defendant," and (3) the claimant is not "in a position to show the particular circumstances that caused the offending agency or instrumentality to operate to her injury."

Sanchez v. Old Pueblo Anesthesia, P.C., 183 P.3d 1285, 1289 (Ariz. App. 2008) (quoting Lowrey v. Montgomery Kone, Inc., 42 P.3d 621, 623 (Ariz. App. 2002)). *Res ipsa loquitur* is applicable "'only when it is a matter of common knowledge among laymen or

medical [experts], or both, that the injury would not ordinarily have occurred if due care had been exercised.'" Id. (alteration in original) (quoting Ward v. Mount Calvary Lutheran Church, 873 P.2d 688, 693 (Ariz. App. 1994)). As previously explained, Plaintiff has failed to demonstrate that his hand injury is a matter of common knowledge among laymen or medical experts. The doctrine of *res ipsa loquitor* is inapplicable to this case.

Lastly, Plaintiff contends that expert testimony is irrelevant to this case because there is no admissible evidence regarding what happened during Plaintiff's surgery. [Doc. 107 at 10-13] Specifically, Plaintiff argues that Dr. Victor Brown's *Operative Report* is inadmissible hearsay because it is unsigned, incomplete, and filed two years after the completion of the surgery. [Doc. 107 Ex. 1] In the absence of "credible evidence as to what occurred during the May 5, 2004 surgery," Plaintiff contends that "expert testimony would provide no assistance to the trier of fact." [Doc. 107 at 13] As previously explained however, it is the Plaintiff that bears the burden to prove the essential elements of his medical malpractice claim by a preponderance of the evidence. Without admissible evidence regarding his May 5, 2004 surgery, Plaintiff is unable to fulfill his burden to prove that the surgery was negligently performed. Accordingly, the alleged inadmissibility of the *Operative Report* militates in favor of granting Defendant's converted motion for summary judgment.

### III. CONCLUSION

Plaintiff failed to disclose or proffer any expert testimony in this case, as required

by prior orders of the Court and as mandated by the facts of this case and the law applicable thereto. Because Plaintiff has failed to proffer any expert testimony in support of his *FTCA Medical Malpractice Complaint*, this Court lacks subject matter jurisdiction.

**IT IS THEREFORE HEREBY ORDERED** that Defendant's converted motion for summary judgment is **GRANTED**.

**SO ORDERED** this 30th day of June, 2011, in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
United States District Judge